JERRY D. COONS and MARILYN M. COONS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Coons v. Commissioner
Docket No. 1896-80.
United States Tax Court
T.C. Memo 1983-777; 1983 Tax Ct. Memo LEXIS 13; 47 T.C.M. (CCH) 767; T.C.M. (RIA) 83777; December 27, 1983. Gerald G. Hawley, for the petitioners. Scott W. Gray, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $12,930 deficiency in petitioners' 1975 Federal income taxes. The ultimate issue is whether petitioner may file amended returns for his 1975 taxable year, and for his solely owned Subchapter S corporation's fiscal years ending July 31, 1975 and July 31, 1976. Resolution of this issue turns on whether petitioner, Jerry D. Coons, improperly characterized various transactions between himself and his wholly owned Subchapter S corporation during calendar year 1975. Petitioner has not contested the correctness of respondent's deficiency determination and he apparently concedes that in the event we hold that he may not file amended returns the deficiency determined by respondent is correct. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Jerry D. Coons (hereinafter petitioner) and Marilyn M. Coons, husband and wife, resided in Tucson, Arizona, when they filed their petition in this case. They timely filed joint Federal income tax returns for *15 the years in issue with the Internal Revenue Service Center, Ogden, Utah. Throughout the years in issue, petitioner was president and sole shareholder of Automotive Parts and Machine, Inc. (hereinafter Automotive), an accrual basis taxpayer operating on a fiscal year ending July 31. Automotive was organized under the laws of Arizona during November 1970. In August 1971, petitioner loaned Automotive $29,130.11 at ten percent interest on terms calling for monthly interest and principal payments of $150 for ten years followed by a final balloon payment of the balance due. In February 1973, petitioner loaned Automotive an additional $4,000 at ten percent interest, payable in one lump sum of principal and interest ten years from the date the note was executed. During its fiscal years ending July 31, 1973, 1974, and 1975, Automotive elected to be taxed as a small business corporation under the provisions of Subchapter S. [1]
*16 On July 28, 1975, a special meeting of Automotive's Board of Directors was held during which the following resolution was adopted: RESOLVED that the corporation terminate its Subchapter S standing effective July 31, 1975; that the President's salary be raised to $3,000 per month beginning August 1, 1975; [and] that the President be given a salary bonus of $14,000 for the year 1975 * * *. On July 29, 1975, a check in the amount of $14,000 was issued to petitioner; however, the total bonus including state and Federal income tax withholdings amounted to $18,400. On its U.S. Small Business Corporation Income Tax Return (Form 1120S) for the fiscal year ending July 31, 1975, Automotive deducted $39,640 in compensation paid to petitioner, which amount included the total bonus of $18,400. In addition, Automotive reported the following amounts as income distributions to petitioner: Date
Check No.
Amount
8-31-74
No. 4009
$ 5,000.00
9-9-74
No. 4026
19,500.00
9-9-74
No. 9964
5,500.00
12 74
No. 10240
25.00
1-14-75
No. 4188
5,000.00
4-75
No. 4314
5,235.00
40,260.00
On its Form 1120 for the fiscal year ending July 31, 1976, Automotive deducted *17 $30,835 in compensation paid to petitioner. In addition, Automotive reported the following income distributions to petitioner: Date
Check No.
Amount
10-13-75
No. 11105
$21,000.00
10-13-75
No. 4547
15,000.00
$36,000.00
At the time these income distributions were made, petitioner's accountant thought they were distributions of previously taxed income that would generate no taxable income to petitioner pursuant to section 1375(d) and (f). [2]
During 1978, Revenue Agent Janet Guenzi audited Automotive's returns for the fiscal years ending July 31, 1975 and July 31, 1976. As a result of this examination, respondent determined that Automotive made a $28,404 taxable dividend distribution to petitioner during its fiscal year ending July 31, 1975. [3] During March 1978, Ms. Guenzi advised petitioner of the proposed adjustment to his 1975 personal income tax return. Approximately six months later, during late September and early October 1978, petitioner filed amended returns for Automotive's fiscal years ending July 31, 1975 and *18 July 31, 1976, and for his 1975 income tax return [4] to correct alleged errors that had come to light following respondent's audit. On Automotive's amended return for its fiscal year ending July 31, 1975, petitioner recharacterized the following amounts, which originally had been reported as income distributions, as repayment of principal on petitioner's outstanding loans to Automotive: Date
Check No.
Amount
8-31-74
No. 4009
$ 5,000
12-74
No. 1024
25
1-14-75
No. 4188
5,000
4-75
No. 4314
5,235
$15,260
*19 In addition, petitioner recharacterized the $18,400 bonus he received during July 1975 as an advance against the bonus due for the following corporate fiscal year beginning August 1, 1975. As a result of these changes, petitioner reduced by $18,400 the deduction for officers' salaries claimed by Automotive during its fiscal year ending July 31, 1975, and increased Automotive's deduction for officers' salaries by $18,400 during its fiscal year ending July 31, 1976. In effect, these changes increased Automotive's net income for the fiscal year ending July 31, 1975, by $18,400 and correspondingly decreased Automotive's net income for the fiscal year ending July 31, 1976. To reflect Automotive's increased net income for the fiscal year ending July 31, 1975, petitioner filed an amended return on which he reported an additional $18,400 in taxable income during his 1975 calendar year, [5] and he remitted an additional $8,250 in tax when he filed the amended return. The net *20 effect of the changes proposed by petitioner in Automotive's amended returns is to eliminate the $28,404 taxable dividend determined by respondent. [6] Respondent has not accepted the amended returns filed on behalf of petitioner or Automotive contending that the original returns accurately and completely reported the various transactions between petitioner and Automotive. Consequently, the amended returns and petitioner's $8,250 remittance have been held in abeyance pending the outcome of this case. *21 OPINION We must decide whether petitioner may file amended returns for his 1975 taxable year and for Automotive's fiscal years ending July 31, 1975 and July 31, 1976. Respondent argues that the original returns filed for petitioner's 1975 taxable year and Automotive's fiscal years ending July 31, 1975 and July 31, 1976, properly characterized all of the transactions between petitioner and Automotive. Accordingly, respondent maintains that the amended returns were filed merely to avoid the $28,404 dividend that results if the original returns are accepted as filed. Petitioner, on the other hand, argues that the original returns reflect several mistakes that only came to light after respondent's audit was completed and a proposed deficiency was asserted, and that he properly filed amended returns to correct these errors. Based on the record herein, we believe that the original returns properly characterized the transactions between petitioner and Automotive and petitioner may not file amended returns. [7] Respondent's deficiency determination, therefore, must be sustained. *22 Generally, while taxpayers may file amended returns in a variety of circumstances, there is no absolute right to file amended returns. Pacific National Co. v. Welch,304 U.S. 191 (1938); Goldstone v. Commissioner,65 T.C. 113 (1975). Amended returns are normally accepted where one of the following factual situations exists: "(1) The amended return was filed prior to the date prescribed for filing a return; (2) the taxpayer's treatment of the contested item in the amended rturn was not inconsistent with his treatment of that item in his original return; or (3) the taxpayer's treatment of the item in the original return was improper and the taxpayer elected one of several allowable alternatives in the amended return." Goldstone v. Commissioner,supra at 116.In the instant case, petitioner attempted to file amended returns approximately three years after the original returns were due, and he sought to recharacterize various payments in a manner inconsistent with his treatment of the items on his original return. Consequently, to be allowed to file amended returns, petitioner must show that his treatment of the payments between himself *23 and Automotive were improperly characterized on his original return, and that he has properly characterized them on his amended returns. Goldstone v. Commissioner,supra.
With regard to the bonus "for the year 1975," declared by Automotive's Board of Directors in a special meeting on July 28, 1975, we hold that it was properly deducted in Automotive's fiscal year ending July 31, 1975, as reported on the original corporate return for that year. Automotive, as an accrual basis taxpayer, must deduct an expense during "the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Section 1.461-1(a)(2), Income Tax Regs. Since the specific amount of the bonus was declared on July 28, 1975, all events had occurred on that date, and the deduction is properly allocable to Automotive's fiscal year ending July 31, 1975. Petitioner has also sought to recharacterize four payments totalling $15,260 from dividend distributions, as reported on the original returns, to loan repayments, as reported on the amended returns. Based on the record herein, we believe that the original *24 returns properly reported the four payments to petitioner and that petitioner's attempts to recharacterize the income distributions is an ex post facto effort merely to avoid the deficiency determined by respondent. [8] As petitioner stated on brief, "when faced with the proposed assessment supported by authority which had been proffered by the Government, any taxpayer would be provided with the incentive to carefully assess and reanalyze all entries and information which might mitigate the effect of the proposed assessment." This, clearly, is what petitioner has attempted to do, and equally clearly, is what the Supreme Court sought to prohibit in Pacific National Co. v. Welch,supra.
The issue in Pacific National was whether the taxpayer, who employed the defferred payment method to compute sales profit on his original return, was entitled to file a claim for refund two years later utilizing the installment method. In holding the taxpayer was bound by the reporting method reflected *25 on his original return, the Supreme Court stated: Change from one method to the other, as petitioner seeks, would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws. It would operate to enlarge the statutory period for filing returns (sec. 53(a)) to include the period allowed for recovering overpayments (sec. 322(b)). There is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which return is to be made, to have his tax liability computed and settled according to the other method. * * * [Pacific National Co. v. Welch,supra at 194.] Both of the reasons cited by the Supreme Court for the denial of the taxpayer's attempt to change the method of reporting sales income are applicable in the instant case. To allow petitioner to reclassify income distributions as loan repayments or to treat the $18,400 bonus as an advance which chameleonically becomes a bonus in a subsequent tax year, would impose tremendous uncertainty in the administration of the revenue laws. When petitioner's and Automotive's returns *26 were filed petitioner had chosen to characterize four payments as income distributions. To allow petitioner to alter this treatment merely because it would mitigate the deficiency determined by respondent would subject the Commissioner to endless disputes with taxpayers over the proper characterization of any payment that could subsequently be recharacterized to the taxpayer's benefit. Moreover, the changes attempted by petitioner would affect petitioner's taxable income for both 1975 and 1976 because they alter the amount of taxable income earned by Automotive during each of those years, which income petitioner must report in his individual return pursuant to section 1373. Consequently, petitioner may not file amended returns for himself or Automotive and respondent's deficiency determination must be sustained. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. The Subchapter S Revision Act of 1982, Pub. L. No. 97-354, 96 Stat. 1969, significantly altered the rules applicable to electing small business corporations for tax years beginning after 1982. For a discussion of the provisions of Subchapter S prior to the 1982 amendment, see Prescott v. Commissioner,T.C. Memo. 1983-709↩.
2. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.↩
3. This dividend distribution was calculated (with figures rounded to the nearest dollar) as follows: ↩
Automotive's Income &
Previously
Distribution Transactions
Taxed Income
Retained Earnings 7-31-72
$36,537
$24,099
1120S Income 7-31-74
34,273
Less: Amounts distributed within
2-1/2 months considered
distribution of prior year
( § 1375(f))
8-31-74
$5,000
9-9-74
19,500
9-9-74
5,500
30,000
Remaining Previously Taxed
Income for 7-31-74
4,273
4,273
1120S Income 7-31-75
17,856
Less: Distributions of
current year's income
12-74
25
1-75
5,000
4-75
5,235
10,260
Balance Previously Taxed
Income for 7-31-75
7,596
Distributions made within
2-1/2 months after end
of 7-31-75
10-75
21,000
10-75
15,000
36,000
Distribution exceeding immediate
prior year's taxable
income is dividend to extent there
is available earnings and profits
( §§ 301, 316)
28,404
Remaining previously taxed income
$28,372
4. Petitioner's 1975 amended return was not signed by petitioner or his spouse.↩
5. Petitioner apparently did not file an amended return for his 1976 calendar taxable year reporting Automotive's reduced net income as reflected on its amended return for the fiscal year ending July 31, 1976.↩
6. Petitioner's taxable dividend for calendar year 1975, calculated according to the figures on Automotive's amended returns, is as follows: ↩
Automotive's Income &
Previously
Distribution Transactions
Taxed Income
$24,009.00
1120S Income 7-31-74
34,273.00
Less: Amounts distributed within
2-1/2 months considered
distribution of prior year
( § 1375(f))
9-9-74
19,500.00
9-9-74
5,500.00
25,000.00
Remaining Previously Taxed
Income for 7-31-74
9,273.00
9,273.00
1120S Income 7-31-75
36,256.35
Less: Distributions of
current year's income
0
Balance Previously Taxed
Income for 7-31-75
36,256.35
Distribution made within
2-1/2 months after end
of 7-31-75
10-75
21,000
10-75
15,000
36,000.00
Remaining amount available for
distribution from taxable year
ending 7-31-75
256.35
Remaining previously taxed income
$33,372.00
7. The crux of the problem is that petitioner's accountant was unaware that under section 1.1375-4(a), Income Tax Regs., a corporation terminating its Subchapter S election may not distribute previously taxed income as a nondividend distribution during the first taxable year to which the termination applies, or during any subsequent year. Section 1.1375-6(a), Income Tax Regs., does, however, permit a distribution of the immediately preceding year's undistributed taxable income if the distribution is made within 2 1/2 months after the termination year. Thus, when petitioner's accountant caused Automotive to distribute $36,000 to petitioner within 2 1/2 months after the termination of Automotive's Subchapter S election $28,404 was treated as a dividend distribution out of Automotive's retained earnings and $7,596 was treated as a distribution out of the preceding year's undistributed taxable income. Sections 301, 316. Section 1.1375-4(a), Income Tax Regs.↩ All of petitioner's efforts to recharacterize various transactions were directed toward increasing Automotive's taxable income for its fiscal year ending July 31, 1975, (the immediate preceding taxable year) so that the $36,000 distribution made within 2 1/2 months thereof would be a nontaxable distribution to the extent of that year's undistributed taxable income. Sections 1373, 1375(d) and (f).
8. We note that the proposed loan repayments reflected on the amended returns appear to be contrary to the terms of the loan agreements between petitioner and Automotive.↩